UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| APRYL D. SHUE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:22cv961 (WEF) |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

Plaintiff Apryl D. Shue ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") final decision denying her claim for social security disability insurance benefits.  Plaintiff, a former Fairfax County special education teacher, claims she is disabled due to various neurological impairments, including severe migraines, resulting from being struck in the head with a lacrosse ball while at work.  Plaintiff sought disability insurance benefits from the alleged onset date of March 18, 2013, through her date last insured, March 13, 2019.  Defendant's final decision to deny Plaintiff social security disability benefits was based on determinations by an Administrative Law Judge ("ALJ") and the Appeals Council that Plaintiff was not disabled as defined by the Social Security Act 42 U.S.C. § 301 *et seq.*, and applicable regulations.

Plaintiff timely appealed, and the parties filed Cross-Motions for Summary Judgment.  The parties consented to the undersigned magistrate judge's jurisdiction, and on March 23, 2023, the Honorable United States District Judge Patricia T. Giles referred this case to the undersigned magistrate judge, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  (Dkts.

27, 28). The Cross-Motions for Summary Judgment were fully briefed, and the Court heard argument of counsel on April 28, 2023.

For the reasons set forth herein, which supplement and modify as necessary the Court's statements from the bench during the April 28, 2023 hearing, Defendant's Motion for Summary Judgment is granted, Plaintiff's Motion for Summary Judgment is denied, and the Commissioner's decision that Plaintiff is not disabled will be affirmed.

## I.  Issue on Appeal

As a result of her injury, Plaintiff began to utilize a service dog. Plaintiff claims the service dog was necessary for comfort, support and to alert her to migraines and retrieve medicine. Although some medical records refer to Plaintiff's service dog, there is no prescription and no medical record that explicitly finds the service dog to be medically necessary.

The sole issue raised on appeal is whether the ALJ committed reversible error by failing to specifically address whether Plaintiff's service dog was medically necessary and, if medically necessary, by failing to analyze the impact of the service dog in determining Plaintiff's residual functional capacity ("RFC"). (Dkt. 20 at 7).

## II.  Summary of the Administrative Process and the ALJ's Decision

Following a hearing, the ALJ issued his decision, finding that Plaintiff was not disabled and denying her disability insurance benefits. (AR 15–31). The ALJ engaged in the required five-step evaluation. *See Shinaberry v. Saul*, 952 F.3d 113, 118–19 (4th Cir. 2020). At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity during the relevant time-period. (AR 17). At steps two and three, the ALJ determined that none of Plaintiff's impairments individually was severe and that Plaintiff did not have an impairment or combination of impairments that equaled an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.

Plaintiff does not challenge any of the ALJ's findings in steps one through three.

Because the ALJ had not reached a conclusive determination through the first three steps, the ALJ properly proceeded to determine Plaintiff's RFC, "meaning the most a claimant can still do despite all of the claimant's medically determinable impairments of which the ALJ is aware, including those not labeled severe at step two." *Woods v. Berryhill*, 888 F.3d 686, 689 (4th Cir. 2018). Step four is the focus of Plaintiff's appeal. Here, the ALJ stated that he had carefully considered the "entire record," and found that the Plaintiff:

> [H]ad a residual functioning capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes and scaffolds. She can frequently rotate, flex and extend her neck. She must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, excessive noise, bright lights (brighter than the typical office setting), excessive vibration, pulmonary irritants (such as fumes, odors, dust, gases, and poorly ventilated areas), chemicals, hazardous moving machinery and unprotected heights. She is limited to occupations requiring only frequent near acuity, far acuity, peripheral acuity, and depth perception.

(AR 22). The ALJ found that through the date last insured, Plaintiff had the residual functional capacity to perform her past work as a special education teacher. (AR 29). The ALJ also made "alternative findings for step five of the sequential evaluation process," that other jobs existed in the national economy in significant numbers that Plaintiff could have performed. (AR 29–30).

In reaching this determination, the ALJ considered Plaintiff's testimony as well as the records and opinions of medical providers. (AR 22–29). The ALJ also relied upon the testimony of a vocational expert, who concluded that someone in Plaintiff's position and with Plaintiff's RFC would be capable of performing such work. *Id.* However, the ALJ never directly addressed whether Plaintiff's service dog was medically necessary.

Ultimately, the ALJ found Plaintiff was not disabled, as defined by the Social Security Act, during the relevant time-period. (AR 31).

The Appeals Council denied Plaintiff's request for review, finding "no reason under [its] rules to review the Administrative Law Judge's decision." (AR 1). The ALJ's decision thereby became the final decision of the Commissioner of Social Security. *Id.*

### III. Factual Background

References in the administrative record to Plaintiff's service dog are found in medical reports and in Plaintiff's own statements.

**A. The medical records related to Plaintiff's service dog.**

Plaintiff was routinely treated by four doctors, including at least one neurologist, and she included physician's prescriptions, notes, and assessments in the administrative record.[1] The medical records reflect that Plaintiff owned and used a service dog, with the earliest record of the service dog appearing in February 2018. (*See* AR 1548). Some medical providers noted that Plaintiff either owned or presented with the "service dog," (see AR 1686, 1868, 2006), and some noted what the service dog was capable of doing for Plaintiff, including getting her medicine, laying on her when she has a migraine, detecting a migraine, and picking things up off the floor for her. (*See* AR 1702, 1904, 2840). One medical provider noted that Plaintiff "has a service dog that is in the process of being trained to get her medications when she has severe migraine," and as part of Plaintiff's "Plan," stated, "Continue service dog training." (AR 1548). However, reference to the service dog by medical providers is not consistent, including instances where the medical provider does not make note of the presence or existence of the service dog, where the report suggests the service dog is *not* present, or where the medical provider notes a far more limited role for the service dog than that given by Plaintiff. (*See, e.g.*, AR 1904) ("She has a

---

[1] Plaintiff submitted other medical records and opinions provided by other medical providers. However, none of these materially impact the Court's analysis regarding Plaintiff's service dog.

service dog at home to pick things up off the floor for her.").

### B. Plaintiff's statements related to her service dog.

On October 1, 2020, Plaintiff completed a Function Report provided by the Social Security Administration, which afforded Plaintiff the opportunity to answer questions and describe her day-to-day life and abilities. Plaintiff noted in the Function Report that she owned a "service dog," which she cares for and whose "job is to be with me and tak[e] care of me." (AR 250). She noted that the service dog helped to alert her to taking medications and retrieved medications for her. (AR 251). She noted she does not leave the house without her service dog. (AR 252). She stated the service dog was prescribed to her by a "neurologist" for "medical alert [and] medical retrieval" and that she needs the use of the service dog "constantly." (AR 255). However, Plaintiff does not identify the neurologist, and there is no evidence of any such prescription in the record. (See Dkt. 23, at 12). Finally, on November 19, 2021, during Plaintiff's hearing before the ALJ, Plaintiff testified that the service dog is for "migraine alert and medication retrieval." (AR 69).

### IV. Analysis

### A. If there is relevant and significant evidence that a service animal may be medically necessary, then the ALJ must specifically address medical necessity on the record.

Though the Fourth Circuit has yet to opine on this specific question, the Court finds persuasive the position taken by other courts that a service animal need only be considered in the RFC analysis if there is evidence in the record that the service animal is medically necessary to the claimant. *See Cordell v. Saul*, No.: 3:19-CV-47, 2019 WL 6257994, at *18 (N.D. W. Va. Nov. 4, 2019) ("There is no Fourth Circuit … authority that provides a standard which requires an ALJ to consider an individual's service animal in a person's RFC. However, other district courts have determined that a service dog must be medically necessary to be considered in the individual's RFC.") (citing *Santos v. Colvin*, 2013 WL 5176848 (W.D. Wash. Sept. 12, 2013); *Payano v.*

*Colvin*, 2017 WL 4778593 (D. Nev. Oct. 23, 2017)).  The Court finds the requirement of medical necessity imposes an objective standard to an issue that would otherwise be prone to subjective interpretations and inconsistent applications.

However, the specific issue presented in this appeal is slightly broader, namely when must an ALJ explain on the record their reasoning for or against finding a service animal to be medically necessary.

### 1. Evidence of medical necessity may be found throughout the entire record, not just medical documents.

First, the Court will address the dispute between the parties as to what record evidence an ALJ is required to consider with respect to the medical necessity of a service animal.  Defendant argues that medical necessity must be determined by a medical professional, and that medical necessity may only be established through a prescription or similar document provided by a health care professional that specifically identifies the medical need to be fulfilled by the service animal. (Dkt. 23, at 12).  Plaintiff, on the other hand, argues that the ALJ was required to consider evidence of medical necessity throughout the entire record, including Plaintiff's statements, and not just the medical documentation.  (Dkt. 20, at 7–8).

Certainly, a prescription or other similar documentation from a health care provider that explains the claimant's need and use of the service animal is the clearest way to establish the medical necessity of the service animal and thereby trigger the ALJ's duty to consider the issue in the RFC.  *See Cordell*, 2019 WL 6257994, at *18.  However, Defendant has not cited any statute, regulation or controlling caselaw that states this is the only way in which a claimant can establish the medical necessity of a service animal.  During the April 28, 2023 hearing before the undersigned, counsel for Defendant argued that SSR 96-9p is controlling and requires "medical documentation."  The regulation states, "[t]o find that a hand-held assistive device is medically

6

required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" The Court finds the regulation is not controlling, as a service animal is not a "hand-held device" and the purpose of Plaintiff's service dog is not "to aid in walking or standing," nor has Defendant pointed to any case where a court has applied this regulatory provision to a claimant's use of a service animal. The Court is unwilling to unilaterally expand the scope of SSR 96-9p and will instead strictly construe the plain language of the agency's regulation.

Plaintiff's position of requiring the ALJ to consider the entire record in determining medical necessity is the better argument and is consistent with the ALJ's obligation under SSR 96-8p to perform a full "assessment" of a claimant's RFC. In fact, in this case the ALJ claimed to have considered the "entire record," clearly evidencing an understanding that the record must be considered as a whole. To find otherwise could potentially require the ALJ to ignore relevant and persuasive evidence. This approach promotes an analysis tailored to the unique facts of each case, rather than the application of a rigid rule that could frustrate the proper functioning of the administrative process. For these reasons, this Court is not prepared to find that a prescription or some equivalent medical documentation is the only way a claimant can establish the medical necessity of a service animal.

### 2. The ALJ erred by not making a finding as to medical necessity on the record.

Next, the Court addresses the circumstances under which an ALJ must examine on the record the medical necessity of a service animal. As discussed below, an ALJ must engage in a two-step process: first, if the record contains relevant and significant evidence that a service animal may be medically necessary, then the ALJ must make a specific finding on the record as to medical necessity; and, second, if the ALJ finds the service animal to be medically necessary, then

the ALJ must analyze the impact of the service animal on the claimant's RFC.[2]

Here, the record is completely devoid of any analysis by the ALJ as to whether Plaintiff's service dog was medically necessary. In other words, the ALJ failed to address the threshold question of whether Plaintiff's service dog was medically necessary. Defendant nevertheless argues the Court can infer that the ALJ fully considered the issue and ultimately concluded Plaintiff's service animal was not medically necessary. Defendant claims to find support for this argument in the record where the ALJ stated he considered the "entire record" and mentioned the service dog in his discussion of Plaintiff's RFC, noting that Plaintiff testified during the hearing that she used the service dog to bring her medication and that at least one physician noted the service dog appeared with Plaintiff during a visit. (AR 23, 25).[3] Defendant's argument that the Court can assume the ALJ addressed the issue even though the ALJ made no specific finding and engaged in no meaningful analysis of the evidence is an inference not supported by the record. The ALJ's passing reference to the medical necessity of Plaintiff's service dog does not suggest a careful analysis by the ALJ of the "entire record" and does not establish a record conducive to a thorough judicial review.

Defendant also points to the well-accepted principle that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.

---

[2] Defendant argues that an ALJ is required to address a claimant's service animal in an RFC only if the service animal is medically necessary. While true that an ALJ need only analyze the impact of the service animal in an RFC if the service animal is medically necessary, that is a separate question from when the ALJ must explain its finding as to whether a service animal is medically necessary.

[3] Even here, the ALJ's findings are at best incomplete. The record reflects that multiple medical providers noted the presence of the service dog and that in addition to retrieving medication the service dog also alerted Plaintiff to migraines.

8

2005)).  However, *Reid* holds an ALJ should not have to address every fact in a typically large and complex record, not that an ALJ may ignore an otherwise relevant issue, such as the medical necessity of a service animal.

Plaintiff, on the other hand, argues the Fourth Circuit's recent holding in *Rogers v. Kijakazi*, 62 F.4th 872 (4th Cir. 2023) is controlling, and the Court agrees.  In *Rogers*, the Fourth Circuit concluded that the ALJ erred by failing to consider in the RFC analysis evidence presented by the plaintiff regarding the plaintiff's menstruation cycle, as the record indicated that "her functioning [was] drastically worse during [menstruation]." *Id.* at 880.  The court held that the menstruation cycle evidence was "obviously [] relevant to [the plaintiff's] ability" to do certain work and that "because of the significance of that evidence, it should have been addressed in the ALJ's decision so that there could be appropriate judicial review." *Id.* at 881 (citing *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019)).

The reasoning of *Rogers* is equally applicable to the issue of whether a service animal is medically necessary.  Therefore, the Court finds that if the record taken as a whole presents "relevant" and "significan[t]" evidence that a service dog may be medically necessary, then the ALJ must address the issue and explain their findings as to medical necessity on the record.[4] *Rogers*, 62 F.4th at 881.  If the ALJ finds the service animal not to be medically necessary, then there is a fulsome record from which a reviewing court can determine whether this finding is supported by substantial evidence.  On the other hand, if the ALJ finds a claimant's service animal is medically necessary, then that triggers the ALJ responsibility to analyze the impact of the service

---

[4] *Rogers* refers to the "significance" of evidence as a condition to imposing this requirement on an ALJ, and this Court applies that standard in this appeal.  Nonetheless, this Court recognizes that *Rogers* is the latest in a line of cases requiring an ALJ specifically address a claimant's functions where there is, for example, "considerable" or "contested" evidence in the record on a specific issue.  *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 389 (4th Cir. 2021).

9

animal in a claimant's RFC. If, however, in the face of relevant and significant evidence the ALJ fails to clearly address the issue, then a reviewing court is left to speculate as to what, if any, analysis was employed by the ALJ, and any meaningful judicial review is frustrated.

Here, there is relevant and significant evidence in the form of medical reports and statements by Plaintiff, that at the very least place at issue whether the service dog is medically necessary. Plaintiff's claims that the service dog alerts her to migraines and retrieves medicine – particularly when read in connection with her doctor's direction to continue training the dog – clearly constitutes relevant and significant evidence that initiated the ALJ's duty to weigh the evidence and address the issue on the record. The ALJ committed error by failing to do so.

The Court must now turn to whether that error was harmless, particularly given the lack of clear medical support.

### B. The ALJ's error is harmless in this case.

"[T]he Fourth Circuit has embraced harmless error review of administrative decisions, such that, if an ALJ erroneously considered or failed to consider some evidence, remand is not appropriate unless the claimant was prejudiced." *Dyrda v. Colvin*, 47 F. Supp. 3d 318, 326 (M.D.N.C. Sept. 19, 2014) (citing *Morgan v. Barnhart*, 142 Fed. Appx. 716, 724–25 (4th Cir. 2005); *Toney v. Shalala*, No. 94–1008, 1994 WL 463427, at *3 (4th Cir. Aug. 29, 1994)). Here, though the ALJ erred in failing to address the issue of the service dog's medical necessity on the record, the Court finds that error to be harmless because any finding of medical necessity would not have been supported by substantial evidence.[5] As a result, Plaintiff suffered no prejudice from

---

[5] Under the Social Security Act, the district court will affirm the Commissioner's final decision "when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "such relevant evidence as a reasonable

10

the ALJ's error.

In looking at the evidence of medically necessity, the Court first considers the doctors' reports and notes, and conducts a search of the record for a medical prescription or its equivalent. A prescription has reasonably been considered adequate evidence of necessity, which would trigger a duty for the ALJ to address the service animal's role and impact on the claimant's RFC, while a lack of a prescription or other credible medical documentation may indicate the animal is not medically necessary. *See Cordell*, 2019 WL 6257994, at *18 (stating that where there is a prescription, "the service animal must be considered," but that "a letter from a medical provider that suggests an individual's use of a service dog, without further testimony or documentation of the individual's need and use of the service animal, is insufficient to establish that the service dog is medically necessary") (citations omitted). The medical reports do not reflect that any treating physician prescribed a service dog to Plaintiff or deemed Plaintiff's service dog to be medically necessary. The reports consist of observations by the medical providers, primarily relaying Plaintiff's own descriptions of the role of her service dog. That one doctor included "training" of the dog in a treatment "[p]lan" does not move the needle. This was clearly not a prescription because Plaintiff had already acquired and begun training the service dog, and this brief note does not demonstrate that the doctor considered the service dog to be necessary. As such the medical records on their own do not reasonably support a conclusion that Plaintiff's service dog was medically necessary.

Second, the information provided by Plaintiff, even in conjunction with the medical

---

mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* (internal quotations and citations omitted).

records, remains insufficient. Plaintiff's claim that the service dog was prescribed by a neurologist is not supported by any medical record. It is the Plaintiff's burden, not the ALJ's, to provide such record evidence. *See Jamie L. V. v. Kijakazi*, 2021 WL 4243438, at *6 (E.D. Va. Sept. 17, 2021) ("The ALJ will assist the claimant with developing the factual record, but the claimant must fulfill his or her own burden to inform the ALJ about the evidence to be developed or to submit the evidence independently.") (citing 20 C.F.R. §§ 404.512(a)(1), 416.912(a)(1)). Furthermore, Plaintiff never clearly or sufficiently articulates how and why the service dog is medically necessary. Although under some circumstances "migraine alert and medication retrieval" could constitute medically necessary functions for a service dog, here the record fails to sufficiently explain Plaintiff's need. (AR 69, 251). Is Plaintiff intending to convey that the dog's "migraine alert" would allow her to quickly take preventative medication or even ensure she is in a safe place if overcome by a debilitating migraine? Is Plaintiff suggesting that the service dog can retrieve needed medication if she is incapacitated by a migraine? Is Plaintiff claiming her service dog is the only means by which she may be alerted to a migraine and could retrieve needed medication? The record contains none of this information which would be critical to reasonably support a determination of medical necessity. If anything, Plaintiff's Function Report indicates there were other available means to alert her to take her medicine, including "[c]alendar reminders …. timers … [f]amily helps with reminders/prompts." (AR 251). Moreover, it is reasonable to assume that if the answers to any of the above questions were "yes," and Plaintiff indeed needed the service dog to live and work, then at least one of Plaintiff's treating physicians would have said as much.

As Defendant has pointed out in its briefing, numerous courts have embraced a similar harmless error analysis with respect to aid devices generally, and service animals specifically, where an ALJ failed to address medical necessity but the administrative record simply did not

support such a finding. *See Benjamin C. v. Commissioner of Social Security*, 2022 WL 16571699, at *11 (N.D.N.Y. Nov. 1, 2022) ("Plaintiff is correct that the ALJ erred by omitting any discussion of the service animal, but this court finds that such error was ultimately harmless because plaintiff did not meet his burden to show that the service animal was medically necessary."); *Natividad S. v. Commissioner of Social Security*, 2022 WL 2718511, at *3 (W.D.N.Y. July 13, 2022) ("However, even if the ALJ failed to adequately discuss the issue, Plaintiff failed to present sufficient evidence demonstrating that his emotional support dog was medically necessary. Therefore, the ALJ's failure to explain why he did not consider the emotional support dog in his decision is harmless.").

Therefore, Plaintiff is not prejudiced by the ALJ's error, and this Court does not have grounds to remand.

## V.  Conclusion

For the foregoing reasons, the Court finds that the ALJ did commit error but under the facts of this case the error was harmless. As set forth in the accompanying order, Defendant's Motion for Summary Judgment will be granted, Plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's decision that Plaintiff is not disabled will be affirmed.

**ENTERED** this 30th day of May, 2023.

*William E. Fitzpatrick*
WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

Alexandria, Virginia